AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

*July 02, 2020*

David J. Bradley, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Alejandro Martin GARCIA | ) | Case No. **4:20-mj-1178** |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 29, 2019__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18 U.S.C § 922(a)(6) and 2 | Knowingly make a false statement in connection with the purchase (acquisition) of a firearm and aiding and abetting. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

ATF Special Agent Natasha Smith
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/02/2020

City and state: Houston, TX

Frances H. Stacy
United States Magistrate Judge

U.S. Magistrate Judge Frances H. Stacy
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, NATASHA H. SMITH, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent (SA) employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and I have been so employed since January 2016. I have a Bachelor's Degree in Criminology from the North Carolina State University, and a Graduate Certificate in Homeland Security from the Pennsylvania State University. I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program at Glynco, Georgia. I also graduated from the Bureau of Alcohol, Tobacco, Firearms and Explosives Special Agent Basic Training Course at Glynco, Georgia. I also graduated from the Wake Tech Basic Law Enforcement Training (BLET) Police Academy in North Carolina.

2. As an ATF Special Agent, I have personally conducted multiple complex criminal investigations on a variety of Federal and state criminal statutes; some specifically involving the unlawful possession of firearms by prohibited persons, burglaries and armed robberies of Federal Firearms Licensees (FFL), individuals dealing in firearms without a license, the illegal smuggling of firearms from the US into the country of Mexico, and the possession and distribution of narcotics. During these investigations, I have participated in various types of investigative techniques, including electronic surveillance; undercover agents and informants; and controlled

purchases of firearms from suspects. I have participated in physical surveillance operations and have participated in the execution of state and federal arrest warrants and search warrants.

3. As a result of my training and experience, I have gained knowledge in the utility of undercover agents, confidential informants, physical surveillance, electronic surveillance, Title III wiretaps, consensual recording, investigative interviews, search warrants of social media accounts, mail covers, garbage searches, GPS tracking devices, pole-mounted cameras, the service of Grand Jury subpoenas, courtroom testimony, and the execution of Federal and State search and arrest warrants.

4. By virtue of my training and experience, and through consultation with other Special Agents and officers who have conducted firearm investigations, I have become familiar with the methods used by firearms traffickers to acquire, transport, safeguard, and distribute firearms.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. For the reasons stated below, I submit that there is probable cause to believe that Alejandro Martin GARCIA (DOB: 03/30/1990) (hereafter referred to as GARCIA) knowingly made a false statement in connection with the purchase *(acquisition)* of a firearm, namely a Barrett model M82A1 .50 caliber rifle (SN: AA007903) purchased by GARCIA on March 29, 2019, in violation of Title 18 United States Code § 922(a)(6) and 2.

## PROBABLE CAUSE

7. In April 2019, ATF initiated an investigation into several suspected straw purchasers of firearms from FFL Zeroed In Armory (ZIA) #5-76-04613 located in Pearland, TX. A straw purchase is a purchase wherein an individual agrees to acquire a firearm(s) by completing an ATF Form 4473—Firearms Transaction Record (4473) at an FFL on behalf of someone else who is unable or unwilling to purchase the firearm(s) themselves, and the individual transfers the firearm(s) to that person after purchasing them. A straw purchase is a violation of Title 18 U.S.C. § 922(a)(6)—making a false statement in connection with the purchase *(acquisition)* of a firearm, and Title 18 U.S.C. § 2—aiding and abetting. Straw purchasing is a method commonly utilized by firearms traffickers to acquire firearms. Two (2) of these suspected straw purchasers were identified as James Paxton JEFFERSON and Alejandro Martin GARCIA.

8. Based on ATF Form 4473s—Firearms Transaction Record (hereafter referred to as 4473) obtained from ZIA, JEFFERSON and GARCIA each purchased numerous Barrett .50 caliber rifles in March and April 2019. Barrett .50 caliber rifles are currently weapons-of-choice for Mexican Drug Trafficking Organizations (DTOs).

9. Specifically, GARCIA purchased approximately five (5) Barrett .50 caliber rifles from ZIA, one (1) on each of the following dates: March 9, 2019; March 20, 2019; March 29, 2019; April 5, 2019; and April 8, 2019. Each of these rifles cost approximately $9,000 for a total of $45,000 spent over the course of approximately four (4) weeks.

10. According to income reported to the Texas Workforce Commission, neither JEFFERSON nor GARCIA had the financial means to purchase any of the aforementioned firearms. GARCIA's most recent employer was listed as "Big H Vending," and his last reported

earnings were from the first and second quarters of 2017, during which he made $1,820 and $4,922 respectively.

11. On April 26, 2019, ATF SAs contacted GARCIA via phone number (346) 341-8891. This was the phone number provided to SAs for GARCIA by ZIA and GARCIA's grandmother. Call data records (CDRs) subpoenaed from the cell service provider of GARCIA's phone later revealed that immediately following GARCIA's limited phone conversation with SA Henderson, GARCIA called NICANOR. GARCIA agreed to meet the SAs on the same date and was subsequently interviewed. GARCIA advised he had purchased multiple .50 caliber rifles in recent weeks, but had since "got rid of them." GARCIA advised he had sold the rifles to various individuals at shooting ranges. GARCIA was unable to provide any verifiable identifying information for any of these individuals, nor was he able to provide any contact information for them. GARCIA stated he knew it was illegal to straw purchase firearms on behalf of someone else. GARCIA advised he works as a delivery driver for "Big H Vending," a company that refills vending machine snacks and drinks. GARCIA refused to state how much money he makes.

12. CDRs subpoenaed from the cell service providers of JEFFERSON and GARCIA reflected that JEFFERSON and GARCIA both had significant contact with phone number (832) 469-0035, especially contemporaneous to placing orders at or purchasing firearms from ZIA. Investigative techniques attributed phone number (832) 469-0035 to Jose Abraham NICANOR.

13. Specific analysis of these CDRs reflect the following in relation to particular dates of interest surrounding GARCIA's firearm purchases from ZIA:

    a. March 5, 2019:

        i. NICS background check submitted for GARCIA at ZIA for a Ruger 10/22 rifle and a Barrett .50 caliber rifle; GARCIA received a "delayed" on the

        background check, meaning that ZIA was unable to transfer the firearms to him on that date.

    ii. On March 5th, there were four (4) phone contacts between GARCIA and ZIA.

    iii. On March 5th, there were fifty-nine (59) phone contacts between GARCIA and NICANOR, followed by no activity on the 6th, five (5) contacts on the 7th and no activity on the 8th.

b. March 9, 2019:

    i. GARCIA was transferred the above-listed Ruger and Barrett rifles from ZIA.

    ii. On March 9th, there were three (3) phone contacts between GARCIA and ZIA.

    iii. On March 9th, there were twenty (20) phone contacts between GARCIA and NICANOR.

c. March 20, 2019:

    i. GARCIA purchased a Barrett .50 caliber rifle from ZIA.

    ii. On March 20th, there were three (3) phone contacts between GARCIA and ZIA.

    iii. One of the above phone contacts was a call placed by ZIA to GARCIA at 14:34:26 for twenty-four (24) seconds. GARCIA then placed a call to NICANOR at 14:36:01.

    iv. On March 20th, there were seventy-two (72) phone contacts between GARCIA and NICANOR.

d. March 29, 2019:

    i. GARCIA purchased a Barrett .50 caliber rifle from ZIA.

    ii. On March 29th, there were three (3) phone contacts between GARCIA and ZIA.

    iii. On March 29th, there were twenty-three (23) phone contacts between GARCIA and NICANOR.

e. April 5, 2019:

    i. GARCIA purchased a Barrett .50 caliber rifle from ZIA.

    ii. On April 5th, there were no phone contacts between GARCIA and ZIA.

    iii. On April 5th, there were eighty-one (81) contacts between GARCIA and NICANOR.

f. April 8, 2019:

    i. GARCIA purchased a Barrett .50 caliber rifle from ZIA.

      ii. On April 8th, there were four (4) phone contacts between GARCIA and ZIA.

      iii. One of the above phone contacts was a call placed by ZIA to GARCIA at 14:21:02 for nineteen (19) seconds. GARCIA then placed an outgoing call to NICANOR at 14:21:46.

      iv. On April 8th, there were ninety-two (92) phone contacts between GARCIA and NICANOR.

  g. April 12, 2019:

      i. GARCIA purchased two (2) Ruger 10/22 rifles from ZIA.

      ii. On April 12th, there were no contacts between GARCIA and ZIA.

      iii. On April 12th, there were twenty-five (25) phone contacts between GARCIA and NICANOR.

14. On May 16, 2019, JEFFERSON was arrested on four (4) counts of Causing a Federal Firearm Dealer to Maintain a False Record, Title 18 United States Code Section 924(a)(1)(A). JEFFERSON's cell phone was retained for evidence at the time of his arrest and a Federal search warrant (case H19-0989) was subsequently executed on the device.

15. Analysis of the data extracted from JEFFERSON's cell phone revealed a text message conversation between JEFFERSON and NICANOR, which includes numerous text messages concerning JEFFERSON ordering and purchasing firearms on behalf of NICANOR. Below is some of the content of these messages:

  a. February 12, 2019:

      i. NICANOR: *They asking for these and 5 aks*

      ii. JEFFERSON: *That's a M16 ain't it?*
         *And when?*

      iii. NICANOR: *Today*

      iv. JEFFERSON: *How many of those? And I'm down cuzzz*

      v. NICANOR: *I'm trying to find out the price*
         *Call zia and ask how much*

      vi. JEFFERSON: *Bet*

      vii. NICANOR: *The m4 style ar15*
         *Identical like the one in the picture*

      viii. JEFFERSON: *Remember ak's were like 7 and some change*
         *Ok*

      ix. NICANOR: *The wood ones*

      *Not the steel one*

b. February 16, 2019:

   i. NICANOR: *I gonna swing by*
      *Is the store open*
      *???*
   ii. JEFFERSON: *Yea I believe so…you wanna ride over there?*
   iii. NICANOR: *I'm down*
   iv. **On February 16, 2019, JEFFERSON purchased five (5) Century Arms AK-47 style rifles and three (3) Eagle Arms AR-15 style rifles from ZIA. This appears to be the order that was placed by JEFFERSON on February 12, 2019.**

c. April 9, 2019:

   i. NICANOR: *These boys still ain't came with the bread*
      …
      *I don't have the bread for the barret*
   i. JEFFERSON: *Oh ok…..they want some more of the other thangs?*
   ii. NICANOR: *He wanted 2 aks but need to give me the bread*
   iii. JEFFERSON: *Ok*
   iv. NICANOR: *Would you buy the Barrett for me for 500$ ?*
      *Yay or nay ?*
   v. JEFFERSON: *Yea I got you bro*
      …
   vi. NICANOR: *If we got enough get the little glock for me*
   vii. **On April 9, 2019, JEFFERSON purchased a Glock model 43X from ZIA.**

d. April 12, 2019:

   i. NICANOR: *Check on that big bitch*
   ii. **On April 12, 2019, JEFFERSON purchased a Barrett .50 caliber rifle from ZIA.**

e. April 18, 2019:

   i. NICANOR: *Got the bread*
   ii. JEFFERSON: *I'm pretty sure he let it go bro….ima check tomorrow*
   iii. NICANOR: *Bet*
   iv. **On April 18, 2019, JEFFERSON purchased a Barrett .50 caliber rifle from ZIA.**

16.     Based on NICANOR and JEFFERSON's text messages, it appears that NICANOR was taking orders for these firearms from someone else. NICANOR also advised numerous times that he was either going to pick up or was waiting to get the money for the firearms. As such, it is believed that there are additional unknown individuals involved with the firearms trafficking scheme.

17.     In addition to the above text messages between NICANOR and JEFFERSON, a photo on JEFFERSON's phone taken on January 7, 2019 depicts NICANOR standing next to several opened rifle boxes, each containing an AK-47 style rifle. NICANOR is also holding an AK-47 style rifle and another firearm. On the same date the photo was taken (January 7, 2019), JEFFERSON purchased five (5) Century Arms AK-47 style rifles from ZIA.

18.     On August 12, 2019, a Barrett .50 caliber rifle was recovered in Neuvo Laredo, Mexico, by Mexican law enforcement. This rifle was purchased by GARCIA on March 9, 2019 from ZIA (time-to-crime of 156 days).

19.     On June 26, 2020, members of the Jalisco New Generation Cartel (CJNG)—a violent Mexican drug trafficking organization (DTO)/cartel—conducted an assassination attempt of the Mexico City Chief of Police via a barrage of gunfire. One (1) of the rifles recovered from one of the CJNG trucks utilized to conduct the assassination attempt was a Barrett .50 caliber rifle with an obliterated serial number. Based on various other markings on the firearm, it was determined that this was the Barrett model M82A1 .50 caliber rifle (SN: AA007903) purchased by GARCIA on March 29, 2019 from ZIA (time-to-crime of 455 days).

20.     Similarly, three (3) firearms purchased by JEFFERSON from ZIA including one (1) Barrett .50 caliber rifle were recovered secreted inside a speaker box located inside a vehicle outbound across the United States border into Mexico via the Juarez Lincoln Bridge in Laredo,

TX. All three (3) of these firearms had obliterated serial numbers; the serial numbers were subsequently raised and recovered at the laboratory.

21. Due to the facts outlined above and to the best my knowledge and belief, all statements made in this affidavit are true and correct. Based on these facts, I believe probable cause exists for the issuance of an arrest warrant for Alejandro Martin GARCIA for violations of Title 18 United States Code § 922(a)(6) and 2.

Natasha Smith
Special Agent, ATF

The foregoing affidavit was sworn to telephonically on this 2nd day of July, 2020

Frances H. Stacy
United States Magistrate Judge